Good morning, Your Honor. May it please the Court, I'm Michael Cohen and I'm representing the appellant in this matter. We filed this appeal because the complaint was dismissed and it raised an issue of the statute of limitations. And our position is, is that the complaint and the DFVH complaint was filed in a timely manner. And that the complaint did state a cause of action for a violation of the, for sexual harassment, Your Honor. The appellant was terminated from her job on September 9, 2009 and she filed a DFVH complaint on June 21, 2010. Within nine months of the date she was terminated from her job, she received a right to sue letter on July 8, 2010 and filed her state court action on September 21, 2010. It appeared to us that the attorneys for the employer, as well as the district court, focused on the date that a consensual sexual relationship between the appellant and her supervisor terminated when analyzing and trying to determine when the statute of limitations ran. And we believe that that was the wrong date to use to do that analysis. The correct date should be the date that her employment was terminated. So the termination may fall within the period, but that appears to be all that falls within the period, the actual termination. Anything that happened before seems to be outside the period, isn't it? No, Your Honor. What's still in? It is because of the nature of this, the circumstances giving rise to the claim. Its opposition is a continuing type of harassment that was occurring over a period of time, and it's the last date of the wrongful conduct that should be used to determine when the statute of limitations runs. But the entire complaint was dismissed without leave to amend. And, of course, it's our position, as we were trying to state a cause of action for wrongful termination. So even if you analyze this and just use the date of termination in that regard, still she would have a right to assert a claim for wrongful termination. And what requires continued employment of a former girlfriend? No, this is not an issue as to continued. Well, she doesn't complain at all about, as I read it, about the relationship as being anything other than consensual. The fact that she had a relationship, I think, is provided in order for the persons, the court and persons reviewing this instance, to understand the context in which this controversy arose. What is it she's claiming? On what basis is she discriminated against? Well, she's discriminated on the basis that, first of all, with regard to retaliation, she's retaliated against because she's complaining about sexual harassment. But where's the sexual harassment? She had entered into a consensual relationship. The relationship ended. There's no allegation other than the fact they had this consensual relationship. I'm struggling. Is there a law against firing a former girlfriend? Well, the problem is that there's no law against firing a former girlfriend, because you don't want the former girlfriend around anymore. There's no law against firing a former girlfriend, but there is a law against harassing a person because of a sexual relationship. And that's what you have. But she doesn't allege that. She alleges that she's being harassed because they broke up from a consensual relationship. That's firing a former girlfriend, in my mind. Well, it's our position that under these circumstances, if you have the supervisor engages in a consensual relationship with a subordinate, and at the end of that relationship, the supervisor now is motivated to make false accusations against that employee for the purpose of having that employee terminated, then that should be a conduct that's prohibited by the law that prohibits sexual harassment. And the authority to support that proposition is California law. Well, we have the government code and Title VII that prohibits sexual harassment. Yeah, but this isn't sexual harassment. It's the end of a consensual relationship. It's certainly one thing if a supervisor hits upon a subordinate in order to extract sexual favors. But if there's concededly a consensual relationship, it seems to me you're in a different ballpark. And I'm not persuaded exactly how this connects up to the statute. Well, I understand that people can differ on this. Personally, in my view, in terms of reading the law, in terms of an attempt by the government to prohibit sexual harassment, these cases and the factual scenarios that are being developed are, you know, are just that. They're being developed as we go along. You're willing to tell me. I mean, the question I posed was admittedly colloquial. Does the law forbid the termination of an ex-girlfriend? And you hasten to say no, but, in fact, it seems to me you're saying yes. I'm saying that the law prohibits you discriminating, treating employees differently than other employees in terms of the terms and conditions of employment when your motivation is because you had a prior sexual relationship with this employee. And now you want to remove. Does it say that? Well, it says that in the statute that you're prohibited from discriminating against employees based on sex. And we have cases that, and these are the cases. So it would have been okay if it hit upon a guy? I beg your pardon? If it okay if it had been a gay relationship because he wouldn't be singling out women? I think what the law is trying to say is that when you have sexual relationships that a person's employment should not be affected unfairly because they had a sexual relationship with a supervisor. I think that's what the law is saying. But in addition to that, and I, you know, I think that that's where we are and that's what the law requires and what the law prohibits. But beyond that, in this particular case, this is about a retaliation claim. And even if you make a claim of sexual harassment or harassment, you don't have to be correct in that claim. But the fact is, if you make that claim to your employer and then your employer terminates you in retaliation against you because you made that claim. But in the retaliation claim, it seems like you would, your client would need to allege that either Mr. Wells or Ms. Flagler knew that she had complained of harassment. I did. We did. We did. The complaint is. Where? Where? Let's, directing the panel's attention to beginning in page 5 of the proposed amended complaint, we talk about in March of 2009 and June of 2009, plaintiff complained to Dollar Tree again that Flagler was harassing her because of her prior sexual relationship with Wells. On or about July 1, 2009, Wells and Julian, the district manager, told plaintiff that the two Dollar Tree employees had accused her. I mean, if we go on. But you're not saying, though, I know, go on. I don't think it ever comes across that Mr. Wells or Ms. Flagler knew that she had complained of harassment. That seems like an important deficiency because it's a required element of retaliation. And I agree with you. But if you can point it out, I'd be happy to see it. But I just didn't see it. Okay. All right. Well, let's go on. I think the question is really this. Whether or not harassing, harassing somebody, an employee, because of a prior relationship or the termination of a prior sexual relationship is itself sexual harassment. I think you're suggesting that it is. What is the best case you can cite to support that proposition? There are no, I could not find a case with that particular factual scenario. But I started with the law that prohibits sexual harassment, and I extrapolated out from that as to what is meant by that. And it seemed to me that under these facts, if in fact an employee carried on a sexual relationship with her supervisor and they terminated that relationship, and the supervisor then began to make false accusations against her relating to her job, accusing her of stealing from the company falsely, falsely accusing her of assault, and then terminates, recommends that her employment be terminated for no apparent reason or for reasons that other people would not be terminated, then I would hope that that law would be, that the laws preventing sexual harassment would be broad enough to encompass a situation and protect an employee from being treated unfairly because of the supervisor's motivation related to their prior sexual relationship. That's the way I would interpret the Title VII and the Government Code California prohibiting employment discrimination. I think the spirit of that law is designed in such a way that when the courts see factual situations that give rise to at least reasonable people coming to the conclusion that the employer is being motivated because of this sexual relationship, that it ought to be prevented by these laws. That's one aspect of it. Now, with respect to the part about the retaliation, I mean, in paragraph 33, it talks about in March 2009, plaintiff met with Mr. Guzman, the district manager, and Flagner to talk about plaintiff's complaint about. She told Mr. Guzman, I'm the, the complaint is replete with allegations that Mr. Flag, Mr. Wells knew about this complaint. He had conversations with the plaintiff about this complaint. He transferred the complaint, the plaintiff, from one store to another store because of the complaints. He spoke to Ms. Flagner about the complaints and to the appellant. He counseled them. They agreed, Ms. Flagner agreed that she would, that the parties would resolve the situation. So, I mean, the proposed amended complaint is just in so many different places does it make very clear and say very explicitly that certainly Wells and the employer were aware that she was complaining about sexual harassment. And the, the, I understood that the, the matter was dismissed because of an issue related to the statute of limitations. There's also these complaints of breach of the implied covenant of good faith and fair dealing. I mean, it just, again, the statute of limitations shouldn't really be an issue here as far as I can determine. Do you want to save the balance of your time for rebuttal? Defense counsel. Good morning, Your Honors. Maureen McClain appearing on behalf of Dollar Tree Stores. Your Honors, it seems to me that this case cries out for the application of the Iqbal principle, which is what the district court judge did. The whole core of Plaintiff's argument here is that there was sexual harassment, but there is not an iota of sexual harassment in this record. It commenced with a consensual affair that was stipulated to be consensual by Plaintiff's counsel that happened two years before the DFEH charge was filed. And there is no allegation in either the complaint or the amended complaint that any harassing conduct occurred, that is, nasty words, touching, whatever, after that consensual affair. So this is a case where there is no protected activity alleged, none. I think Mr. Korn is trying to get beyond that. In other words, I think his case is, is it sexual harassment if a supervisor  against an employee based upon the fact that that supervisor terminated a sexual relationship with that employee and for that reason doesn't want the employee around anymore? Is that sexual harassment? I don't think so, Your Honor. I don't think there's any case that so holds. Why not? First of all, as this Court has found in the Candler case, fallouts in the workplace from consensual activity are not necessarily actionable. Secondly, what you just posed, Your Honor, is not the record in this case. Well, you know, she was transferred from one store to another. She was transferred once by Wells. Because he didn't want her around. I mean, that's the allegation. She was transferred once, but, Your Honor, that transfer occurred in August of 2008, so two years prior to the filing of the DFEH charge. There was only one other transfer, which occurred in June of 2009, and plaintiff's counsel stipulated in the case management statement, which appears at 103 of the record, that that second transfer, which is the only one conceivably remotely connected to the charge in a timely fashion, was a mutual decision. So there is really no evidence, Your Honor, of adverse actions taken by Wells to detriment the plaintiff. So I think that's a hypothetical question that doesn't really appear in the facts of this case. The conduct alleged on Wells's part is that he made untruthful statements about her to the second paramour, Ms. Flagler, or the second alleged paramour. But those occurred first in a quite untimely fashion. One was in October or so of 2008. And the second occurred later, something about a knife accusation. But there is no evidence in the record that any one of those was an adverse action. The Court was correct in saying that the only adverse action in my judgment within the one-year period prior to the filing of the charge is the termination. This is not a continuing violation situation under either Federal or State law, it seems to me. We don't have a concerted course of retaliatory conduct. The allegations that were alleged in the complaint and the First Amendment complaint are diverse happenstances occurring on the part of a number of different people. Wells said that I was stealing back in October of 2008. Wells asked me whether I had pulled a knife on other people. Those are all just things that happened. They're not adverse issues. Help me understand. There was a consensual relationship between Ms. Allen and Mr. Wells, correct? Yes. And it ended in 2008? August of 2008. All right. And then at some point she was transferred from Oakland to the El Cerrito store? Correct. And when was that? August of 2008 at the latest. Okay. And you're saying that's not an adverse action? I'm saying that it really doesn't matter whether it's an adverse action or not, because it's well beyond the statute of limitations. And it really isn't an adverse action. There's no assertion in the record that there was a pay difference in that store or there was any different job. And then how much later was she transferred? Because Ms. Flagler was there, who was the alleged paramour of Mr. Wells as well, prior relationship, correct? And she was a supervisor at the El Cerrito store. She was a store manager in the El Cerrito store. And then how long was Ms. Allen there before she was transferred back to Oakland? Ms. Allen was at that store from August of 2008 until June of 2009, when this mutual decision to transfer happened, and she went back to Oakland. Where Mr. Allen still was? Mr. Wells. I'm sorry. Mr. Wells was still there. Mr. Wells was a district manager at that time, so he was not the store manager. The store manager in the Oakland store at that point was a man named Orlando Romero. And Mr. Wells got promoted? He did get promoted, yes, before he got terminated, but that's not part of the record. In any event, the termination is entirely distinct from the other alleged activities. The termination as pled is for the plaintiff being $100 short in her cash drawer in September of 2009 and taking her own money or money borrowed from a relative and putting it in the cash drawer. I've got to say, in some ways, that was the most puzzling part of this case for me, and it's sort of a tangent. But why exactly is it a problem for Dollar Tree that she reaches into her own pocket or a relative's pocket and makes up the difference, which everybody's worked at least a little retail, or most of us have, and sometimes it doesn't work out exactly right? I think your brief made a reference at some point about something being inherently suspicious, and I couldn't figure out what was suspicious about a $100 shortfall or that the employee tried to solve the problem herself. What's wrong with all of that? I'll answer that question, but as you pose the facts, consider how different they are from anything involving Wells or what Wells was saying. But in some context, it could be said, gee, this sounds like a pretext to me because it's not a real compelling reason to get rid of an employee who's trying to make up a $100 shortfall out of her own pocket. Dollar Tree has very strict rules that you don't commingle personal and business funds for obvious reasons because that would lead to all kinds of nefarious things, potentially. And they have a very strict rule that if there's a shortage, it needs to be reported. It can't be covered up. They need to know about it right away. So it seems to me it's just what any business would say, and that is your accountant can't come in and say, gee, I had some problems balancing the books, but don't worry about it because I put some money there. That's just not how financial records should be maintained. And is that why she was terminated? That is why she was terminated, yes. And then there was this fight, I mean, this knife incident or alleged knife incident. How does that play into here? The knife incident seems to me is irrelevant. The allegation is that in July of 2009, Guzman, who was a district manager and Wells, came to Ms. Allen and said, two employees told us that you pulled a knife on them. We have a declaration to that effect, is what the complaint alleges, and we'd like you to tell us about it. It doesn't seem to me that's an adverse action in any way, shape or form. There's no contention that anything happened as a result of that. So it does seem to me that the district court essentially, if I could sum by talking about the causes of action individually, the first cause of action is retaliation for a sexual harassment complaint. And our position is, A, there's no complaint of sexual harassment because there's no underlying sexual harassment claim, that consensual activity is not sexual harassment, and B, that there is such a far removed period between the event of consensual sex and the termination, which happened a year or so, a year or more later, that there can't be any nexus drawn. Additionally, we would argue that it's clear that there was no protective complaint at any time, because talking about having a consensual relationship with your boss is not making a protected complaint. The other thing she talked about was that essentially Ms. Flagler was nasty with her. There's no real allegation that she did anything adverse, gave her some warnings, but there's no allegation that that led to her termination. Well, I'm curious on your position on whether or not Ms. Allen's retaliation and harassment claims were time-barred, especially when she has alleged multiple instances of conduct by the defendants that occurred one year prior to June 21, 2010. That's the date that she filed the administrative, I guess, complaint. Is that correct? That's correct. It's really June 22, but the record has said June 21. All right. So why is it time-barred? It's time-barred because there is not a continuing course of conduct. I believe that's what the district court judge found, citing Amtrak v. Morgan. But aren't there multiple incidents by the conduct of the defendants that occurred? Your Honor, there are multiple incidents, but they're not adverse. They're not by the same person. They're not of the same type. I don't see how you could call them a kind of integrated course of retaliatory conduct, which even under State law, even under Yanowitz, which is far more liberal in this regard than the Morgan holding of the United States Supreme Court. But even under Yanowitz, I don't see how you can find diverse actions from different people to be a continuing course of conduct. I think you do need to look at what occurred one year prior to June 21, 2010, when the charge was filed. The other termination claim alleged is the fourth cause of action, which is the public policy termination claim. And our position with respect to that claim is that there is no public policy. I don't believe there is any case that suggests that there is a public policy to have a workplace free from any sort of fallout, no matter how kind of non-adverse, after you've had a sexual, consensual sexual relationship with your boss. So we would submit that the district court correctly analyzed that claim, the fourth cause of action, together with the fifth and the sixth causes of action, when the court ruled that there was not a sufficient pleading to overcome the presumption of at-will employment. And I think the record is clear that there isn't a sufficient pleading. Essentially, the pleading is that there was progressive discipline at Dollar Tree. But that does not undergoes, it seems to me, overcome the pleading, particularly the pleading requirement, particularly in light of Iqbal. I mean, essentially what we have here is a woman had a consensual relationship a couple of years back before she filed the charge with a man. Then she had kind of run-ins with another person with whom he allegedly had a sexual relationship. None of which rose to the level of an adverse employment action, in my judgment. Then she was transferred by her own accord or with her own assent, as stipulated by opposing counsel. And then two or three months later, in September of 2009, she was terminated under a different store manager in a different store because of commingling funds in a violation of Dollar Tree's policies. So we think the district court was precisely right in saying there really, if you look at the factual allegations and you disregard the legal conclusions, there is no claim here. And I have given plaintiff's counsel one attempt to amend. Thank you, Mr. Cohen. Yes. Thank you. Thank you. What we have here is a situation, if we look at, for instance, Paragraph 18 of the proposed amended complaint, we have an employee who in March of 2009 had a sexual relationship with a man. And in June of 2009, in June of 2009, is complaining to her employer that she's being harassed by a supervisor because of a prior sexual relationship with the district manager, and both of the women had prior sexual relationships with the same district manager. A prior consensual sexual relationship. Prior consensual. So she's complaining that, listen, I'm working with this manager who is harassing me because I used to date the same guy that she dated. Okay. And then we have, and then we have two months later, three months later, we have her being terminated from her employment on a recommendation by the district manager who is the principal involved in this situation, the alleged perpetrator or the alleged person that's involved in the sexual relationship, who is recommending that she be terminated under some circumstances that don't add up, that are unreasonable in terms of her working and what we've described in the proposed amended complaint. She's working. There's an unusual situation that develops, and she's talking to her supervisor who instructs her at that time on how to handle this situation. She follows this person's instructions. There's a discrepancy in the tape and the amount of cash. Rather than go home with that discrepancy, she puts her own money in there to avoid any appearance of impropriety. And she's terminated the next day for some reason saying that you shouldn't have put your own money in there to reconcile. When she was told by her supervisor on that night and on prior occasions that that is an appropriate way to handle those kinds of situations. So just to direct your attention to the proposed complaint to dispel any misunderstanding as to whether or not Wells knew about this and his participation, I'd like you to look at page 325, 28, 29, 32, 33, 34, and 46, and the proposed amended complaint makes it very clear that Mr. Wells is intricately involved in and knowledgeable about these complaints that are being made against him and that this lady was terminated because she's making these complaints. Again, the law doesn't require that these complaints be true or accurate. It's just the fact that she's making a complaint puts her in a protected class. And if they subsequently are taking adverse action against her because she made these complaints of harassment, then that's a basis for retaliation. And she ought to have an opportunity to present these facts to a jury. Roberts. Thank you. We thank both counsel for your helpful arguments. The case just argued is submitted. That concludes this morning's calendar. We're adjourned. Thank you. All rise.
judges: Tashima, Clifton, Murguia